UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **ADVIZEX TECHNOLOGIES, LLC**, 6480 Rockside Woods Boulevard South Suite 190 Independence, OH 44131 | ) ) ) ) ) | CASE NO. JUDGE |
| Plaintiff, | ) ) | **COMPLAINT** |
| v. | ) ) | |
| **MICHAEL BAKER**, 814 Henry Lane Murfreesboro, TN 37129 | ) ) ) ) | |
| **BRUCE PRIDDY**, 1503 Boardwalk Place Gallatin, TN 37066 | ) ) ) ) | |
| **ERNEST ROBERTS (HAYES) ALLEY III**, 2011 Richard Jones Road Apt E26 Nashville, TN 37215 | ) ) ) ) ) ) | |
| and | ) ) | |
| **JORDAN MCMANUS**, 612 N 9th Street B Nashville, TN 37206 | ) ) ) ) | |
| Defendants. | ) ) | |

# INTRODUCTION

1. This action arises out of Defendants Michael Baker ("Baker"), Bruce Priddy ("Priddy"), Ernest Roberts (Hayes) Alley III ("Alley"), and Jordan McManus' ("McManus") (collectively, the "Defendants") breach of their contractual obligations to Plaintiff Advizex Technologies, LLC ("Advizex"), specifically their obligations not to compete with Advizex, as set

37307899.2

forth in in their respective Confidentiality, Non-Competition and Non-Solicitation Agreement (the "Agreements") with Advizex.

2. A true and accurate copy of Baker's Confidentiality, Non-Competition and Non-Solicitation Agreement, dated June 2, 2021 (the "Baker Agreement"), is attached hereto as **Exhibit 1.**

3. A true and accurate copy of Priddy's Confidentiality, Non-Competition and Non-Solicitation Agreement, dated October 19, 2020 (the "Priddy Agreement"), is attached hereto as **Exhibit 2.**

4. A true and accurate copy of Alley's Confidentiality, Non-Competition and Non-Solicitation Agreement, dated September 18, 2024 (the "Alley Agreement"), is attached hereto as **Exhibit 3.**

5. A true and accurate copy of McManus' Confidentiality, Non-Competition and Non-Solicitation Agreement, dated November 6, 2023 (the "McManus Agreement"), is attached hereto as **Exhibit 4.**

## JURISDICTION, VENUE, AND PARTIES

6. Advizex is a limited liability company duly formed and validly existing under the Laws of the State of Delaware with its principal place of business located at 6480 Rockside Woods Boulevard South, Suite 190, Independence, Ohio 44131.

7. Advizex's sole member is Cloud Ventures, Inc., which is incorporated in Delaware.

8. Advizex has other locations in multiple states, including one location in Franklin, Tennessee, just outside of Nashville.

9. Upon information and belief, Baker resides in or around Murfreesboro, Tennessee.

10. Upon information and belief, Priddy resides in or around Gallatin, Tennessee.

37307899.2

11. Upon information and belief, Alley resides in or around Nashville, Tennessee.

12. Upon information and belief, McManus resides in or around Nashville, Tennessee.

13. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because complete diversity of citizenship exists between Plaintiff (Delaware citizen) and Defendants (Tennessee citizens), and the amount in controversy exceeds $75,000, exclusive of interest and costs.

14. The Court possesses supplemental jurisdiction over the state law claims stated herein pursuant to 28 U.S.C. § 1367.

15. This Court also has personal jurisdiction over Baker, Priddy, Alley, and McManus because they specifically consented to and agreed to submit themselves to the jurisdiction of the State of Ohio Courts of appropriate venue or the United States District Court sitting in Ohio relating to any action arising out of the Agreements or the employment relationship established by the Agreements. *See* Ex. 1-4, ¶ 21.

16. Venue is proper because Baker, Priddy, Alley, and McManus consented to venue in the State and Federal Courts of Ohio in the Agreements at issue. *See* Exs. 1-4, ¶ 21.

## FACTUAL ALLEGATIONS

17. Baker first commenced employment with Advizex as a Solution Architect in the Solution Architecture department on or about June 7, 2021.

18. Priddy first commenced employment with Advizex as an Account Executive in the Sales department on or about October 12, 2020.

19. Alley first commenced employment with Advizex an Account Executive in the Sales department on or about September 25, 2024.

3

20. McManus first commenced employment with Advizex as a Solution Architect in the Solution Pursuit department on or about December 4, 2023.

21. Advizex is in the business of information technology ("IT") hardware, software, contract services, and related support, training, and services, in the Information Management and Business Management Consulting Marketplace.

22. Advizex provides equipment, installation, and on-site services to its customers.

23. Through Advizex's work with its customers, Advizex and Advizex employees, including Defendants, have access to client-provided and client-acquired material that is regarded as confidential under state and/or federal law.

24. Advizex also contracts with vendors to provide products and services to the vendors for resale.

25. Advizex's contracts with these vendors incorporate flow-down confidentiality provisions from the vendor's customers.

26. Due to the significant amount of and significant access to confidential information provided to Advizex and Advizex employees by customers and vendors, Advizex requires its employees to enter Confidentiality, Non-Competition and Non-Solicitation Agreements, like the Agreements at issue in this matter.

27. The Agreements provide, *inter alia:*

> 2. **Company's Business.** I acknowledge and agree that the Company's Business is highly competitive and includes, but is not limited to, providing information technology hardware, software, contract services, and related support, training and services in the Information Management and Business Management Consulting Marketplace (the "Company's Business").
>
> 3. **Protection of Confidential and Proprietary Information, Personal Information and Trade Secrets.** I agree and acknowledge that during my employment, I will be provided and will use confidential and proprietary information and trade secrets of the Company, and I acknowledge receipt of same

4

upon my execution of this Agreement. The confidential and proprietary information and trade secrets include, but are not limited to, all non-public information pertaining to the Company's Business, including but not limited to, the Company's trade secrets, inventions, customer lists, supplier lists, supplier information, business plans, projections, software, technology, patents, financial information, product and service development plans, market strategies, other competitive information concerning the Company, buying habits or practices of customers, customer payment methods, credit and shipping particulars, operational procedures, sources of leads and methods of obtaining new business, methods of purchasing, marketing, selling, performing and pricing products and services, marketing and sales strategies and practices, pricing information, margin information, markup information, volume information, prospect lists, customer and prospect names, addresses, needs and preferences information, prospective employees, employee lists, employee capabilities matrices, employee compensation, employee training information and practices, all data obtained from or related to the Company's customers and prospects, the methods and operations of the Company as they exist from time to time, information identified as confidential and/or proprietary by the Company, Personal Information, Protected Health Information, and any other information that I receive as a result of my employment with the Company, whether in written, tangible, electronic or any other form or media (the "Confidential Information"). Confidential Information specifically includes all information the Company receives from customers or other third parties that is not generally known to the public or is subject to a confidentiality agreement. The Company's Confidential Information also includes, but is not limited to pre-existing client or prospective client information that I have brought with me to the Company and have used in any fashion in the course of my employment with the Company provided that such use does not violate any contractual or other obligations that I may have with any former employers. The restriction does not apply to such information which is known to the public so long as such knowledge does not result from a breach of any provision of this Agreement by me or from a breach by any other person who owes a duty of non-disclosure to the Company.

***

4. **<u>Protection of Confidential Information</u>.**

    a. **<u>Use or Disclosure</u>.** I agree that I will hold in strictest confidence and will not disclose, directly or indirectly, in any way to anyone, including any person, firm or corporation, the Company's Confidential Information, both during my employment with the Company and indefinitely thereafter, regardless of whether the termination of my employment is voluntary or involuntary, unless such use or disclosure is previously authorized by the Company in writing for use in pursuit of the Company's Business and for the benefit of the Company.

37307899.2

***

    b.    **Adverse Use.** I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, use any of the Company's Confidential Information in any manner that may directly or indirectly have an adverse effect upon the Company's Business, nor will I perform any acts that would tend to reduce the value of the Company's Confidential Information.

    c.    **Competition.** I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, directly or indirectly, use the Company's Confidential Information to engage or assist in the marketing, soliciting or selling to the Company's existing, active or prospective customers, products or services that are substitutable for or competitive with products or services offered or provided by the Company when conducting the Company's Business.

***

5.    **Return of Company Property.** I agree that all Confidential Information, whether embodied in electronic media or other forms, or copies thereof, is the property of the Company exclusively. I agree that upon my termination of employment with the Company, or within five (5) business days of the Company making such a request, whichever is sooner, I will return to the Company all Confidential Information, company property and customer property, in any form, including, but not limited to hard copy and electronic form, and in any media in which such information is recorded or stored. I agree that I acquire no property rights or claim to the Confidential Information or any other property of the Company or its customers.

6.    **Restrictive Covenants.** I agree further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect the Company's customer relationships with both its potential and existing customers, to protect its customer goodwill, and to protect the Company from improper or unfair competition, I will not, directly or indirectly:

    a.    **Non-Competition.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, participate in the ownership or control of, act as an employee, agent, or contractor of, or provide any services to, or for, any business that is engaged in the Company's Business, or engage

6

           in any activity that is competitive with the Company, within any County in which had any responsibility, or conducted any business, on behalf of the Company in the three (3) years prior to my termination of employment with the Company.

***

      d.    **<u>Non-Work with Company Customers or Potential Customers.</u>** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, manage, operate, be connected with, employed by, sell goods to, or perform services for, or on behalf of, in any manner, any client or customer, or potential client or customer, of the Company either myself or on behalf of any other entity that may employ, engage or associate with me in any fashion.

      e.    **<u>Non-Interference with Suppliers.</u>**  During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, interfere, or seek to interfere, with the continuance of supplies to the Company (or the terms relating to such supplies) from any suppliers who supplied goods or services to the Company.

For the purposes of this Agreement, "client(s)" or "customer(s)" of the Company, shall mean any individual, corporation, limited liability company, partnership, proprietorship, firm, association, or any other entity that I have actually sold or delivered any products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding my termination from the Company's employ, and "potential client(s) or customer(s)" shall be any individual, corporation, limited liability company, partnership, proprietorship, firm, association or any other entity that I have contacted, orally, in writing or in person, to solicit, sell and/or deliver products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding the date of my termination from the Company's employ.

7.    **<u>Irreparable Harm.</u>**  I acknowledge that the Company has a legitimate need to protect itself from improper or unfair competition and to protect its Confidential Information, the Company's customer relationships with both its prospective and existing customers and its customer goodwill. To that end, I acknowledge and represent that the scope of the restrictions contained in this Agreement are reasonable and necessary to protect the Company's business, goodwill and property rights. I also acknowledge that irreparable harm would be caused by my violation of the restrictions contained herein.

7

       8.       **Remedies/Damages.** I agree that the Company's remedies at law for any violation of this Agreement are inadequate and that the Company has the right to seek injunctive relief in addition to any other remedies available to it. Therefore, if I breach this Agreement, the Company has the right to, and may seek issuance of a court ordered temporary restraining order, preliminary injunction and permanent injunction as well as any and all other remedies and damages, including monetary damages. I further agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by the Company in enforcing this Agreement. I agree that the limitations as to time set forth in paragraph 6 shall be tolled during any period of my non-compliance with the restrictions set forth in this Agreement.

       9.       **Duty to Disclose Agreement and to Report New Employer.** I acknowledge that the Company has a legitimate business purpose in the protection of its Confidential Information. I also recognize and agree that the Company has the right to such information as is reasonably necessary to inform the Company whether the terms of this Agreement are being complied with. Accordingly, I agree that I will promptly and forthrightly provide any new employer with a copy of this Agreement and notify them of my obligations contained here. I also will provide the Company with the identify of my new employer(s) and a description of the services being provided by me in sufficient detail to allow the Company to reasonably determine whether such activities fall within the scope of activities prohibited by the provisions of this Agreement.

Exs. 1-4, ¶¶ 2- 9.

**Baker's Resignation from Advizex**

       28.       Baker gave notice of his resignation from his employment with Advizex on or about November 11, 2025. *See* Resignation Email, attached as **Exhibit 5**.

       29.       Per Baker's notice of resignation, his final day with Advizex was scheduled for November 25, 2025. *See* Ex. 5.

       30.       On or about November 20, 2025, Advizex terminated Baker's employment, effective immediately. That same day, Advizex sent a letter to Baker reminding him not to violate his Agreement with Advizex ("Baker Reminder of Obligations Letter"). *See* Baker Reminder of Obligations Letter, dated November 20, 2025, attached as **Exhibit 6**.

8

37307899.2

31. Baker never responded to the Baker Reminder of Obligations Letter, despite Advizex's request that he respond by November 24, 2025 and confirm his knowledge and compliance with his ongoing post-employment obligations to Advizex.

32. On December 30, 2025, Advizex sent a second letter to Baker following up on the Baker Reminder of Obligations Letter, noting that Advizex was aware that Baker is working for Davenport Group, Inc. ("Davenport") in direct violation of his ongoing post-obligations owed to Advizex, and demanding that Baker cease and desist from any further violations of the Baker Agreement (the "Baker Cease and Desist Letter"). The Baker Cease and Desist Letter requested a response by January 5, 2026. *See* Baker Cease and Desist Letter, dated December 30, 2025, attached as **Exhibit 7**.

33. As of the date of this filing, Baker has failed to respond to the Baker Reminder of Obligations Letter or the Baker Cease and Desist Letter or confirm his obligations to Advizex.

**Priddy's Resignation from Advizex**

34. Priddy gave notice of his resignation from his employment with Advizex on or about November 14, 2025. *See* Resignation Email, attached as **Exhibit 8**.

35. Per Priddy's notice of resignation, his final day with Advizex was scheduled for November 28, 2025. *See* Ex. 8.

36. On or about November 20, 2025, Advizex terminated Priddy's employment, effective immediately. That same day, Advizex sent a letter to Priddy reminding him not to violate his Agreement with Advizex ("Priddy Reminder of Obligations Letter"). *See* Priddy Reminder of Obligations Letter, dated November 20, 2025, attached as **Exhibit 9**.

37. Priddy never responded to the Priddy Reminder of Obligations Letter, despite Advizex's request that he respond by November 24, 2025 and confirm his knowledge and compliance with his ongoing post-employment obligations to Advizex.

38. On December 30, 2025, Advizex sent a second letter to Priddy following up on the Priddy Reminder of Obligations Letter, noting that Advizex was aware that Priddy is working for Davenport in direct violation of his ongoing post-obligations owed to Advizex, and demanding that Priddy cease and desist from any further violations of the Priddy Agreement (the "Priddy Cease and Desist Letter"). The Priddy Cease and Desist Letter requested a response by January 5, 2026. *See* Priddy Cease and Desist Letter, dated December 30, 2025, attached as **Exhibit 10**.

39. As of the date of this filing, Priddy has failed to respond to the Priddy Reminder of Obligations Letter or the Priddy Cease and Desist Letter or confirm his obligations to Advizex.

**Alley's Resignation from Advizex**

40. Alley gave notice of his resignation from his employment with Advizex on or about November 14, 2025. *See* Resignation Email, attached as **Exhibit 11**.

41. Per Alley's notice of resignation, his final day with Advizex was scheduled for December 1, 2025. *See* Ex. 11.

42. On or about November 18, 2025, Advizex sent a letter to Alley reminding him not to violate his Agreement with Advizex ("Alley Reminder of Obligations Letter"). *See* Alley Reminder of Obligations Letter, dated November 18, 2025, attached as **Exhibit 12**.

43. On or about November 20, 2025, Advizex terminated Alley's employment, effective immediately.

44. Alley never responded to the Alley Reminder of Obligations Letter, despite Advizex's request that he respond by November 21, 2025 and confirm his knowledge and compliance with his ongoing post-employment obligations to Advizex.

**McManus' Resignation from Advizex**

45. McManus gave notice of his resignation from his employment with Advizex on or about November 17, 2025. *See* Resignation Email, attached as **Exhibit 13**.

46. Per McManus' notice of resignation, his final day with Advizex was scheduled for November 28, 2025. *See* Ex. 13.

47. On or about November 18, 2025, Advizex sent a letter to McManus reminding him not to violate his Agreement with Advizex ("McManus Reminder of Obligations Letter"). *See* McManus Reminder of Obligations Letter, dated November 18, 2025, attached as **Exhibit 14**.

48. On or about November 20, 2025, Advizex terminated McManus' employment, effective immediately.

49. McManus never responded to the McManus Reminder of Obligations Letter, despite Advizex's request that he respond by November 21, 2025 and confirm his knowledge and compliance with his ongoing post-employment obligations to Advizex.

**Defendants' Employment with Davenport**

50. Baker and Priddy are working for Davenport in violation of the Agreements.

51. Upon information and belief, Alley and McManus are also working for Davenport in violation of the Agreements.

52. Each Defendant is available for contact via the Davenport main telephone number.

53. Davenport has its principal place of business in Lewisburg, Tennessee and a second location in Illinois.

54. Davenport is a direct competitor of Advizex.

55. Davenport is an IT solutions, software, and service provider that designs, implements, and supports end-to-end IT infrastructure and services. Davenport offers managed IT services, cloud consulting and migration, cybersecurity, Microsoft technology integration, and IT consulting.

56. Davenport is engaged in the Company's Business.

57. On or about November 20, 2025, suspicious that Baker and Priddy were working for Davenport in violation of their Agreements, Advizex sent Davenport a copy of the Baker Reminder of Obligations Letter and the Priddy Reminder of Obligations Letter, putting Davenport on notice of Baker and Priddy's ongoing post-employment obligations to Advizex. *See* Exs. 6, 9.

58. As of the date of this filing, Davenport has failed to address receipt of the Baker Reminder of Obligations Letter or the Priddy Reminder of Obligations Letter.

59. On or about December 30, 2025, Advizex sent Davenport a letter providing repeat notice of Baker and Priddy's ongoing post-employment obligations to Advizex, asking for details regarding Davenport, Baker, and Priddy's efforts to ensure Baker and Priddy's compliance with the Agreement, and asking for definitive confirmation that Davenport employs Defendants (the "Demand for Confirmation and Remedial Measures Letter"). *See* Demand for Confirmation and Remedial Measures Letter, dated December 30, 2025, attached as **Exhibit 15.**

60. The Demand for Confirmation and Remedial Measures Letter asked that Davenport respond by January 5, 2026 with the requested confirmation and information.

61. On January 12, 2026, Davenport responded to the Demand for Confirmation and Remedial Measures Letter (the "Davenport Response Letter"). *See* Davenport Response Letter, attached as **Exhibit 16**. In the letter, Davenport confirmed that it employs Baker and Priddy but

12

37307899.2

does not confirm whether it employs Alley or McManus. Davenport further confirms knowledge of Baker and Priddy's confidentiality and non-solicitation provisions and states that Davenport has instructed Baker and Priddy not to violate these obligations.

62. The Davenport Response Letter fails to address Defendants' non-competition obligations, confirm details regarding Defendants' employment with Davenport, or provide nearly all of the information requested in the Demand for Confirmation and Remedial Measures.

## COUNT I
### (Breach of Contract)

63. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

64. Defendants voluntarily entered into the Agreements with Advizex.

65. The Agreements are valid, binding, and enforceable contacts.

66. The Agreements are supported by adequate legal consideration.

67. Advizex fully performed as required under the Agreements.

68. Per the Agreements, for one (1) year following their separation of employment from Advizex, Defendants are prohibited from participating in the ownership or control of, acting as an employee, agent, or contractor of, or providing any services to, or for, any business that is engaged in the Company's Business, or engaging in any activity that is competitive with Advizex, within any County in which Defendants had any responsibility, or conducted any business, on behalf of Advizex in the three (3) years prior to the separation of Defendants' employment with Advizex.

69. Defendants breached the Agreements by engaging in the conduct described herein, including by working for a direct competitor of Advizex, Davenport, in the counties in which Defendants had responsibility or conducted business on behalf of Advizex in the three (3) years prior to Defendants' separation of employment with Advizex.

37307899.2

70. Defendants breached the Agreements by engaging in the conduct described herein, including by failing to provide Advizex with the identity of their new employer and a description of the services they are providing.

71. As a result of Defendants' breaches, Advizex has suffered damages.

72. Advizex is entitled to damages, costs, and disbursements incurred in this action, including attorneys' fees.

## COUNT II
### (Breach of Fiduciary Duty)

73. The preceding paragraphs are re-alleged and incorporated by reference as if fully set forth herein.

74. As employees of Advizex, Defendants owed their employer an undivided duty of good faith and loyalty including, but not limited to, the duty to advance the interests of Advizex, the duty to protect Advizex's Confidential Information, the duty not to solicit Advizex employees to leave Advizex's employ, and the duty not to compete with Advizex.

75. Defendants breached their duty of good faith and loyalty to Advizex by planning and preparing to compete with Advizex while still employed by Advizex, inevitably using Advizex's Confidential Information, and soliciting one another to leave Advizex's employ.

76. Defendants' breach of their duty of good faith and loyalty has wrongfully benefited Defendants and Davenport, and, in turn, has caused Advizex to suffer damages.

77. As a result of Defendants' breach of their duty of good faith and loyalty, Advizex is entitled to damages, costs, and disbursements incurred in this action, including attorneys' fees.

## REQUESTS FOR RELIEF

WHEREFORE, Advizex respectfully requests:

37307899.2

A. That this Court order Defendants to return all Advizex Confidential Information and property in their possession or control.

B. That this Court restrain Defendants from destroying or disposing of any paper documents in their possession, custody or control, or deleting anything from any computers to which they have access, including smartphones, PDAs or any other electronic storage devices, including e-mail, databases, and any other electronically stored data that relate to, evidence or concern any of the issues involved in this litigation and that Defendants immediately turn over all of the electronic devices in their possession, custody or control for non-destructive imaging to preserve the contents of these electronic devices; and

C. That this Court grant Advizex monetary damages, including, but not limited to, exemplary and punitive damages, costs associated with Defendants' breach of the Agreement and their duty of loyalty, and all other appropriate damages, as well as all interest, costs, and disbursements of this action, including attorneys' fees as contractually agreed upon, and such other and further relief as this Court may deem just and proper.

Respectfully submitted,

/s/ Karina R. Conley
MCDONALD HOPKINS LLC
Karina R. Conley (0093906)
Julia G. Ross (0099095)
600 Superior Avenue, East, Suite 2100
Cleveland, OH 44114
Phone: (216) 348-5400
Fax: (216) 348-5474
E-Mail: kconley@mcdonaldhopkins.com
         jross@mcdonaldhopkins.com

MCDONALD HOPKINS PLC
Timothy J. Lowe, Esq. (MI Bar # P68669)
39533 Woodward Avenue, Suite 318
Bloomfield Hills, Michigan 48304
Telephone: (248) 646-5070

Facsimile: (248) 646-7075
E-Mail: tlowe@mcdonaldhopkins.com

*Counsel for Plaintiff Advizex Technologies, LLC*

16

37307899.2