# EXHIBIT 6

| | |
|---|---|
| **From:** | Kall, David M. |
| **To:** | bakertnus@yahoo.com |
| **Cc:** | C.R. Howdyshell; Jackie Allen; solutions@davenportgroup.com; Conley, Karina; Ross, Julia |
| **Subject:** | Continuing Obligations / Cease and Desist |
| **Date:** | Thursday, November 20, 2025 9:50:48 AM |
| **Attachments:** | image001.jpg |
| | Mike Baker Agreement(37149789.1).pdf |
| | Mike Baker - Reminder of Obligations Letter(37149788.2).pdf |

Mr. Baker:

Attached please correspondence regarding the termination of your employment from Advizex Technologies for cause.

**David M. Kall**
Member

**T: 216.348.5812**           **600 Superior Avenue East**
**F: 216.348.5474**           **Suite 2100**
**dkall@mcdonaldhopkins.com**           **Cleveland, OH 44114**
**www.mcdonaldhopkins.com**



**McDonald Hopkins**

A business advisory and advocacy law firm®

McDonald Hopkins LLC
600 Superior Avenue, East
Suite 2100
Cleveland, OH 44114

P 1.216.348.5400
F 1.216.348.5474

Direct Dial: 216.348-5812
E-mail: dkall@mcdonaldhopkins.com

November 20, 2025

**Via Email and Federal Express**

Michael Baker
814 Henry Ln
Murfreesboro, TN 37129
bakertnus@yahoo.com

**Re:     Compliance with Continuing Obligations**

Dear Mike:

This firm represents Advizex Technologies, LLC ("**Advizex**"). We are writing to remind you of your continuing legal obligations to Advizex. Among these continuing obligations are requirements that you do not use or disclose any confidential or proprietary information, solicit Advizex clients or employees, or engage in business activities that compete with Advizex for the duration specified in your agreement. Advizex received your resignation notice and is aware that you have already violated these restrictions. Advizex also has concerns that you will continue to violate these restrictions.

Your obligations between yourself and Advizex are contained in your Confidentiality, Non-Competition and Non-Solicitation Agreement, which you agreed to on June 2, 2021 (the "**Agreement**"). A copy of the Agreement, which you should read, is enclosed for your reference. In the Agreement, you agreed, among other things, to various obligations both during, and after, your employment with Advizex. Specifically, you agreed to the following:

> **3.     Protection of Confidential and Proprietary Information, Personal Information and Trade Secrets.** I agree and acknowledge that during my employment, I will be provided and will use confidential and proprietary information and trade secrets of the Company, and I acknowledge receipt of same upon my execution of this Agreement. The confidential and proprietary information and trade secrets include, but are not limited to, all non-public information pertaining to the Company's Business, including but not limited to, the Company's trade secrets, inventions, customer lists, supplier lists, supplier information, business plans, projections, software, technology, patents, financial information, product and service development plans, market strategies, other competitive information concerning the Company, buying habits or practices of customers, customer payment methods, credit and shipping particulars, operational procedures, sources of leads and methods of obtaining new business, methods of purchasing, marketing, selling, performing and pricing products and services, marketing and sales strategies and practices, pricing information, margin

37149788.2

Michael Baker
November 20, 2025
Page 2

information, markup information, volume information, prospect lists, customer and prospect names, addresses, needs and preferences information, prospective employees, employee lists, employee capabilities matrices, employee compensation, employee training information and practices, all data obtained from or related to the Company's customers and prospects, the methods and operations of the Company as they exist from time to time, information identified as confidential and/or proprietary by the Company, Personal Information, Protected Health Information, and any other information that I receive as a result of my employment with the Company, whether in written, tangible, electronic or any other form or media (the "Confidential Information"). Confidential Information specifically includes all information the Company receives from customers or other third parties that is not generally known to the public or is subject to a confidentiality agreement. The Company's Confidential Information also includes, but is not limited to pre-existing client or prospective client information that I have brought with me to the Company and have used in any fashion in the course of my employment with the Company provided that such use does not violate any contractual or other obligations that I may have with any former employers. The restriction does not apply to such information which is known to the public so long as such knowledge does not result from a breach of any provision of this Agreement by me or from a breach by any other person who owes a duty of non-disclosure to the Company.

"Personal Information" ("PI") is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax I.D. number, social insurance number, driver's license number, state issued identification card number, financial information, healthcare information, or credit or debit card number.

"Protected Health Information" ("PHI") is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

4. **Protection of Confidential Information.**

    a.    **Use or Disclosure.** I agree that I will hold in strictest confidence and will not disclose, directly or indirectly, in any way to anyone, including any person, firm or corporation, the Company's Confidential Information, both during my employment with the Company and indefinitely thereafter, regardless of whether the termination of my employment is voluntary or involuntary, unless such use or disclosure is previously authorized by the Company in writing for use in pursuit of the Company's Business and for the

37149788.2

Michael Baker
November 20, 2025
Page 3

benefit of the Company. In addition, I will not view or access any PI or PHI unless required by the Company in the course of my job duties and responsibilities for the Company and then only when authorized by the Company to do so. To the fullest extent permitted by applicable law, I shall bear all costs, losses and damages resulting from a breach of this paragraph.

b.     **Adverse Use.** I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, use any of the Company's Confidential Information in any manner that may directly or indirectly have an adverse effect upon the Company's Business, nor will I perform any acts that would tend to reduce the value of the Company's Confidential Information.

c.     **Competition.** I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, directly or indirectly, use the Company's Confidential Information to engage or assist in the marketing, soliciting or selling to the Company's existing, active or prospective customers, products or services that are substitutable for or competitive with products or services offered or provided by the Company when conducting the Company's Business.

d.     To the extent any Confidential Information is required to be disclosed by law, court order or similar compulsion or in connection with any legal proceeding, I agree that such disclosure shall be limited to the narrowest disclosure so required and, except to the extent prohibited by law, I shall give the Company at least two (2) weeks' notice, if practicable, of the basis for any such compelled disclosure of Confidential Information and shall reasonably cooperate with the Company in limiting disclosure and obtaining suitable confidentiality protections.

\*\*\*

6.     **Restrictive Covenants.** I agree further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect the Company's customer relationships with both its potential and existing customers, to protect its customer goodwill, and to protect the Company from improper or unfair competition, I will not, directly or indirectly:

a.     **Non-Competition.** During my employment with the Company and for a period of one (1) year following the termination of my

37149788.2

Michael Baker
November 20, 2025
Page 4

employment, for any reason, whether such termination is voluntary or involuntary, participate in the ownership or control of, act as an employee, agent, or contractor of, or provide any services to, or for, any business that is engaged in the Company's Business, or engage in any activity that is competitive with the Company, within any County in which I had any responsibility, or conducted any business, on behalf of the Company in the three (3) years prior to my termination of employment with the Company.

Notwithstanding anything to the contrary contained in this Agreement, the Company agrees that I may own up to two (2%) of the outstanding shares of the capital stock of a company whose securities are registered under Section 12 of the Securities Exchange Act of 1934.

b.  **Non-Solicitation of Company Employees.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, solicit, divert, or attempt to solicit or divert, from the Company any employee or any person providing services to, or on behalf of, the Company, or influence any such person to no longer serve as an employee or provide services to, or for, the Company.

c.  **Non-Solicitation of Company Customers or Potential Customers.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, solicit, divert, or attempt to solicit or divert from the Company, any work or business related to the Company's Business, or otherwise related to any activity that is competitive with the Company, from any client or customer, or potential client or customer, of the Company for either myself or any other entity that may employ, engage or associate with me in any fashion. I shall, no later than the date of termination with the Company, whether voluntary or involuntary, inform the Company of any known prospective business opportunities.

d.  **Non-Work with Company Customers or Potential Customers.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, manage, operate, be connected with, employed by, sell goods to, or perform services for, or on behalf of, in any manner, any client or

37149788.2

Michael Baker
November 20, 2025
Page 5

> customer, or potential client or customer, of the Company either myself or on behalf of any other entity that may employ, engage or associate with me in any fashion.

> **e.** **<u>Non-Interference with Suppliers.</u>** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, interfere, or seek to interfere, with the continuance of supplies to the Company (or the terms relating to such supplies) from any suppliers who supplied goods or services to the Company.

> For the purposes of this Agreement, "client(s)" or "customer(s)" of the Company, shall mean any individual, corporation, limited liability company, partnership, proprietorship, firm, association, or any other entity that I have actually sold or delivered any products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding my termination from the Company's employ, and "potential client(s) or customer(s)" shall be any individual, corporation, limited liability company, partnership, proprietorship, firm, association or any other entity that I have contacted, orally, in writing or in person, to solicit, sell and/or deliver products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding the date of my termination from the Company's employ.

***

**These restrictions do not expire until November 25, 2026**.

Additionally, Paragraph 9 of the Agreement requires you to provide a copy of the Agreement to any subsequent employer and notify them of your obligations. That paragraph provides, in pertinent part:

> …I agree that I will promptly and forthrightly provide any new employer with a copy of this Agreement and notify them of my obligations contained herein. I also will provide the Company with the identity of my new employer(s) and a description of the services being provided by me in sufficient detail to allow the Company to reasonably determine whether such activities fall within the scope of activities prohibited by the provisions of this Agreement.

Advizex is aware that you flagrantly took and retained a substantial volume of confidential, proprietary, and trade secret information belonging to Advizex. This includes, but is not limited to, 1,302 documents related to the State of Tennessee, which you brazenly downloaded from Advizex's SharePoint system, constituting a direct violation of the Agreement. Your continued

37149788.2

Michael Baker
November 20, 2025
Page 6


retention of these documents and information is an ongoing and serious breach of the Agreement. Advizex has also learned that you already communicated your departure to the State of Tennessee, which Advizex interprets as a clear indication of your plan to further violate your Agreement by competing with Advizex, soliciting Advizex's customers, and inevitably disclosing Advizex's confidential, proprietary, or trade secret information. Furthermore, Advizex is aware that you are commencing employment with the Davenport Group, Inc., a competitor of Advizex, in violation of your contractual obligations. Advizex is sending a copy of this letter to the Davenport Group, Inc. to ensure its leadership is aware of your ongoing post-employment restrictions and obligations to Advizex.

**This letter is to put you on notice that you must immediately cease and desist from any further activities that violate the Agreement, including but not limited to: (1) retaining, using, and/or sharing Advizex's confidential, proprietary and/or trade secret information; (2) soliciting Advizex's customers, including but not limited to the State of Tennessee; and (3) competing with Advizex on behalf of or for the benefit of any Advizex competitor, including but not limited to the Davenport Group, Inc. If you do not immediately cease and desist from such conduct, Advizex intends to pursue all available legal remedies to protect its interests. Moreover, it is imperative that you immediately return any and all confidential, propriety and/or trade secret information belonging to Advizex in your possession to me, including but not limited to the 1,302 documents you downloaded.**

**Please provide to me, on or before Monday, November 24, 2025 written confirmation that you: (1) have ceased the above-referenced prohibited activities; (2) have returned any and all Advizex confidential, proprietary, and/or trade secret information or proprietary information to me, including but not limited to the 1,302 documents you downloaded; (3) have destroyed any and all files containing Advizex confidential, proprietary, and/or trade secret information or proprietary information; (4) understand your ongoing obligations to Advizex; and (5) have ceased violating and will not further violate, your contractual and legal obligations to Advizex**. You may provide this confirmation to me via email at dkall@mcdonaldhopkins.com.

Given the potential dispute between you and Advizex, you are hereby put on notice that you must preserve all potential evidence related to the above claims. Specifically, you must not destroy, delete, modify, or discard any documents, email messages, files or information, in electronic, paper or any form or media, related to this dispute. In addition, you are instructed not to reformat your home or work computers or change or delete any information contained therein. If you choose to do otherwise, Advizex will treat this matter with the utmost seriousness and will seek any and all available sanctions against you.


37149788.2

Michael Baker
November 20, 2025
Page 7


Very truly yours,

David M. Kall

cc:    C.R. Howdyshell (chowdyshell@advizex.com)
       Jackie Allen (jallen@advizex.com)
       Davenport Group, Inc. (solutions@davenportgroup.com and via Certified Mail and Federal
       Express to 104 Belfast Street, Lewisburg, TN 37091 Attn: Pam Paris, Vice President of
       Human Resources)

37149788.2

# ADVIZEX TECHNOLOGIES, LLC
## Confidentiality, Non-Competition and Non-Solicitation Agreement

## BACKGROUND

I desire to become, or to remain, an employee of ADVIZEX TECHNOLOGIES, LLC and/or its affiliated companies, joint ventures, subsidiaries, and the successors and assigns of these entities (hereinafter the "Company") and the Company desires to employ me or to continue to employ me but also to preserve the confidentiality of certain information and relationships that will be disclosed to me during the course of my employment by the Company.  I acknowledge that substantial cost and expense has been or will be incurred by the Company for my training, and my training and employment will require the disclosure of certain confidential and proprietary information, trade secrets and customer and supplier relationships.

## AGREEMENT

In consideration of my employment, continued employment, promotion, compensation increase, commission and/or bonus from the Company, and being provided with the Confidential Information of the Company, as defined in paragraph 3 below, I agree to the following:

1.      **At-Will Employment.**  I acknowledge that my employment is on an at-will basis, which means that both the Company and I may terminate my employment relationship at any time for any or no reason, with or without notice.  I understand that I may be co-employed by a professional employer organization ("PEO") and the Company to work at and for the Company. I acknowledge that my employment with the Company and PEO are one and the same.

2.      **Company's Business.**  I acknowledge and agree that the Company's Business is highly competitive and includes, but is not limited to, providing information technology hardware, software, contract services, and related support, training and services in the Information Management and Business Management Consulting Marketplace (the "Company's Business").

3.      **Protection of Confidential and Proprietary Information, Personal Information and Trade Secrets.**  I agree and acknowledge that during my employment, I will be provided and will use confidential and proprietary information and trade secrets of the Company, and I acknowledge receipt of same upon my execution of this Agreement.  The confidential and proprietary information and trade secrets include, but are not limited to, all non-public information pertaining to the Company's Business, including but not limited to, the Company's trade secrets, inventions, customer lists, supplier lists, supplier information, business plans, projections, software, technology, patents, financial information, product and service development plans, market strategies, other competitive information concerning the Company, buying habits or practices of customers, customer payment methods, credit and shipping particulars, operational procedures, sources of leads and methods of obtaining new business, methods of purchasing, marketing, selling, performing and pricing products and services,

5/8/2020
(OH)
{2315285:2}

marketing and sales strategies and practices, pricing information, margin information, markup information, volume information, prospect lists, customer and prospect names, addresses, needs and preferences information, prospective employees, employee lists, employee capabilities matrices, employee compensation, employee training information and practices, all data obtained from or related to the Company's customers and prospects, the methods and operations of the Company as they exist from time to time, information identified as confidential and/or proprietary by the Company, Personal Information, Protected Health Information, and any other information that I receive as a result of my employment with the Company, whether in written, tangible, electronic or any other form or media (the "Confidential Information").  Confidential Information specifically includes all information the Company receives from customers or other third parties that is not generally known to the public or is subject to a confidentiality agreement. The Company's Confidential Information also includes, but is not limited to pre-existing client or prospective client information that I have brought with me to the Company and have used in any fashion in the course of my employment with the Company provided that such use does not violate any contractual or other obligations that I may have with any former employers.  The restriction does not apply to such information which is known to the public so long as such knowledge does not result from a breach of any provision of this Agreement by me or from a breach by any other person who owes a duty of non-disclosure to the Company.

"Personal Information" ("PI") is Confidential Information and includes an individual's first name and last name or first initial and last name in combination with any of the following: an individual's social security number, tax I.D. number, social insurance number, driver's license number, state issued identification card number, financial information, healthcare information, or credit or debit card number.

"Protected Health Information" ("PHI") is Confidential Information and includes information that is created, received, and/or maintained by the Company related to an individual's health care (or payment related to health care) that directly or indirectly identifies the individual.

4.      **Protection of Confidential Information.**

      a.      **Use or Disclosure**.  I agree that I will hold in strictest confidence and will not disclose, directly or indirectly, in any way to anyone, including any person, firm or corporation, the Company's Confidential Information, both during my employment with the Company and indefinitely thereafter, regardless of whether the termination of my employment is voluntary or involuntary, unless such use or disclosure is previously authorized by the Company in writing for use in pursuit of the Company's Business and for the benefit of the Company.  In addition, I will not view or access any PI or PHI unless required by the Company in the course of my job duties and responsibilities for the Company and then only when authorized by the Company to do so.  To the fullest extent permitted by applicable law, I shall bear all costs, losses and damages resulting from a breach of this paragraph.

      b.      **Adverse Use.**  I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, use any of the Company's

Confidential Information in any manner that may directly or indirectly have an adverse effect upon the Company's Business, nor will I perform any acts that would tend to reduce the value of the Company's Confidential Information.

c.      **Competition.**  I agree that I will not, at any time, both during my employment with the Company and indefinitely thereafter, directly or indirectly, use the Company's Confidential Information to engage or assist in the marketing, soliciting or selling to the Company's existing, active or prospective customers, products or services that are substitutable for or competitive with products or services offered or provided by the Company when conducting the Company's Business.

d.      To the extent any Confidential Information is required to be disclosed by law, court order or similar compulsion or in connection with any legal proceeding, I agree that such disclosure shall be limited to the narrowest disclosure so required and, except to the extent prohibited by law, I shall give the Company at least two (2) weeks' notice, if practicable, of the basis for any such compelled disclosure of Confidential Information and shall reasonably cooperate with the Company in limiting disclosure and obtaining suitable confidentiality protections.

5.      **Return of Company Property.**  I agree that all Confidential Information, whether embodied in electronic media or other forms, or copies thereof, is the property of the Company exclusively.  I agree that upon my termination of employment with the Company, or within five (5) business days of the Company making such a request, whichever is sooner, I will return to the Company all Confidential Information, company property and customer property, in any form, including, but not limited to hard copy and electronic form, and in any media in which such information is recorded or stored.  I agree that I acquire no property rights or claim to the Confidential Information or any other property of the Company or its customers.

6.      **Restrictive Covenants.**  I agree further that in order to preserve the confidentiality of the Confidential Information, to prevent the theft or misuse of the Confidential Information, to protect the Company's customer relationships with both its potential and existing customers, to protect its customer goodwill, and to protect the Company from improper or unfair competition, I will not, directly or indirectly:

a.      **Non-Competition**.  During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, participate in the ownership or control of, act as an employee, agent, or contractor of, or provide any services to, or for, any business that is engaged in the Company's Business, or engage in any activity that is competitive with the Company, within any County in which I had any responsibility, or conducted any business, on behalf of the Company in the three (3) years prior to my termination of employment with the Company.

Notwithstanding anything to the contrary contained in this Agreement, the Company agrees that I may own up to two (2%) of the outstanding shares of the

5/8/2020
(OH)
{2315285:2}

capital stock of a company whose securities are registered under Section 12 of the Securities Exchange Act of 1934.

b. **<u>Non-Solicitation of Company Employees</u>.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, solicit, divert, or attempt to solicit or divert, from the Company any employee or any person providing services to, or on behalf of, the Company, or influence any such person to no longer serve as an employee or provide services to, or for, the Company.

c. **<u>Non-Solicitation of Company Customers or Potential Customers</u>.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, solicit, divert, or attempt to solicit or divert from the Company, any work or business related to the Company's Business, or otherwise related to any activity that is competitive with the Company, from any client or customer, or potential client or customer, of the Company for either myself or any other entity that may employ, engage or associate with me in any fashion. I shall, no later than the date of termination with the Company, whether voluntary or involuntary, inform the Company of any known prospective business opportunities.

d. **<u>Non-Work with Company Customers or Potential Customers</u>.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, manage, operate, be connected with, employed by, sell goods to, or perform services for, or on behalf of, in any manner, any client or customer, or potential client or customer, of the Company either myself or on behalf of any other entity that may employ, engage or associate with me in any fashion.

e. **<u>Non-Interference with Suppliers</u>.** During my employment with the Company and for a period of one (1) year following the termination of my employment, for any reason, whether such termination is voluntary or involuntary, interfere, or seek to interfere, with the continuance of supplies to the Company (or the terms relating to such supplies) from any suppliers who supplied goods or services to the Company.

For the purposes of this Agreement, "client(s)" or "customer(s)" of the Company, shall mean any individual, corporation, limited liability company, partnership, proprietorship, firm, association, or any other entity that I have actually sold or delivered any products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding my termination from the Company's employ, and "potential client(s) or customer(s)" shall be any individual, corporation, limited liability company, partnership, proprietorship, firm, association or any other entity that I have contacted, orally, in writing or in

5/8/2020
(OH)
{2315285:2}

person, to solicit, sell and/or deliver products or services to, or to which I have been exposed through Company meetings or marketing efforts, during the twelve (12) months preceding the date of my termination from the Company's employ.

7.      **Irreparable Harm.**  I acknowledge that the Company has a legitimate need to protect itself from improper or unfair competition and to protect its Confidential Information, the Company's customer relationships with both its prospective and existing customers and its customer goodwill.  To that end, I acknowledge and represent that the scope of the restrictions contained in this Agreement are reasonable and necessary to protect the Company's business, goodwill and property rights.  I also acknowledge that irreparable harm would be caused by my violation of the restrictions contained herein.

8.      **Remedies/Damages.**  I agree that the Company's remedies at law for any violation of this Agreement are inadequate and that the Company has the right to seek injunctive relief in addition to any other remedies available to it.  Therefore, if I breach this Agreement, the Company has the right to, and may seek issuance of a court ordered temporary restraining order, preliminary injunction and permanent injunction as well as any and all other remedies and damages, including monetary damages.  I further agree to pay any and all legal fees, including without limitation, all attorneys' fees, court costs, and any other related fees and/or costs incurred by the Company in enforcing this Agreement.  I agree that the limitations as to time set forth in paragraph 6 shall be tolled during any period of my non-compliance with the restrictions set forth in this Agreement.

9.      **Duty to Disclose Agreement and to Report New Employer.**  I acknowledge that the Company has a legitimate business purpose in the protection of its Confidential Information.  I also recognize and agree that the Company has the right to such information as is reasonably necessary to inform the Company whether the terms of this Agreement are being complied with.  Accordingly, I agree that I will promptly and forthrightly provide any new employer with a copy of this Agreement and notify them of my obligations contained here.  I also will provide the Company with the identity of my new employer(s) and a description of the services being provided by me in sufficient detail to allow the Company to reasonably determine whether such activities fall within the scope of activities prohibited by the provisions of this Agreement.

10.      **Representations as to Prior or Other Agreements.**  I represent and warrant that I am able to perform the contemplated duties of employment without being in breach of confidentiality agreements or disclosing proprietary information of any third party, and that no proprietary information of any third party shall be disclosed to the Company.  I further represent and warrant that I am not prohibited from entering into this Agreement or performing services under it by any non-competition, non-solicitation, anti-piracy agreement, relationship agreement, or any other restrictions.  I agree to indemnify and hold the Company harmless from all claims or causes of action by any person or entity against the Company arising out of any alleged breach by me of any such agreement or any other restrictions inconsistent with the foregoing representations.

11.      **Waiver.**  The Company's failure to enforce any provision(s) of this Agreement shall not in any way be construed as a waiver of any such provision(s), or prevent the Company thereafter from enforcing each and every other provision of this Agreement.

12.     **Company Use of my Name, Image and Voice.**  The Company may use and publish my name and picture, including audio or video tape recordings, for purposes relating to its business without a specific release from me.

13.     **Protected Information.**  Any programs, inventions, patents, software, ideas, methods, plans, improvements, products or other Confidential Information, proprietary information, or trade secrets that are developed at the Company prior to and/or during my employment ("Protected Information") are rightfully the property of the Company.  I make no claim whatsoever to the ownership of such Protected Information and will not during my employment with the Company or at any time thereafter use the Protected Information except in connection with the Company's business.

14.     **Proprietary Rights.**  I agree that all work and creation of work products associated with this Agreement or my employment with the Company both during employment and for twelve (12) months following termination of employment, are deemed work for hire for the Company.  In consideration of employment with the Company I assign and transfer to the Company all rights of any kind and nature (including without limitation royalties, other income and property rights) in discoveries, inventions, patentable material, copyrightable materials (including without limitation any writing, book, article, computer program, work method, film, recording or graphic production) and any other work products whatsoever.  I further agree that I shall cause to be furnished to the Company such instruments, instructions, and documentation as the Company may reasonably require to ensure that the aforesaid rights shall belong to the Company.  I shall return all proprietary information to the Company.  The only items which may be excluded from this Agreement must meet all of the following criteria:

    a.    Developed entirely on my own time and outside the scope of my duties with the Company;

    b.    Not related to my responsibilities and/or duties as an Employee of the Company; and

    c.    Developed without any use of the Company's resources, facilities, personnel, financial support or data compiled as part of my work with the Company.

15.     **Documentation of Work.**  I will document and provide explanation of, and make such documentation and explanation available to the Company, all processes, codes, plans, architecture, schematics, designs, and administration tools that I work on or create.  I will preserve the integrity of all Company software and make every reasonable effort to write code using descriptive variable names that are self explanatory.

16.     **Business Information.**  If during the period of employment with the Company I develop any programs, inventions, patents, software, ideas, methods, plans, improvements, products or other confidential information that does or might relate to the Company's business, including potential new lines of business ("Business Information"), I shall disclose such Business Information to Company in writing and the Company shall have the right, without the payment

Page 6 of 9

of any further consideration to me, to adopt such Business Information for its own use.  Such Business Information belongs solely to the Company whether used by the Company or not.

17.     **Return of Company Property and Assignment of Rights.**  All intellectual property belonging to the Company, whether described in this Agreement or otherwise belonging to it, and all workpapers, records, programs, designs, patents, business plans, financial statements, manuals, memoranda, lists and other property created by, delivered to or compiled by me for or on behalf of the Company or its representatives, vendors or clients, that pertain to the business of the Company shall be and remain the property of the Company and be subject at all times to its discretion and control.  All such property, records, etc. and all Confidential Information, Protected Information, Business Information, correspondence, reports, charts, advertising materials and other similar data pertaining to the Company's (or its clients') business, activities or future plans that are collected by me shall be delivered promptly to my supervisor without request upon termination of my employment and thereafter.

I agree that all Confidential Information, Protected Information, Business Information and intellectual property, whether embodied in electronic media and all other forms, and all copies thereof, are the property of the Company exclusively.  I agree that upon my termination of employment with the Company that I will return to the Company, and not retain, any and all Confidential Information, Protected Information, Business Information, intellectual property, Company property and client property, in any form, including, but not limited to hard copy and electronic form, and in any media in which such information is recorded or stored, and I agree that I acquire no property rights or claim to such property.

Both during and after my employment, I will cooperate with the Company in assigning to it all such intellectual property and other items whenever reasonably requested by the Company.  If by reason of my physical or mental disability I am unable to do so, I irrevocably appoint the Company as my agent and attorney-in-fact to execute and file any patent, copyright or other applications and to prosecute, maintain or transfer letters patent or copyright registrations with the same effect as if executed or filed by me.

18.     **Choice of Law and Entire Agreement.**  This Agreement shall be governed by, interpreted in accordance with and enforced under the laws of the State of Ohio, without regard to conflict of laws principles.  This Agreement represents the entire understanding between me and the Company regarding its contents, and supersedes and replaces any prior agreement between the parties on this subject matter.  Any alteration or modification of this Agreement shall not be valid unless in writing and signed by all parties.

19.     **Termination.**  I agree to bring any claims that I may have against the Company within three hundred (300) days of the day that I knew, or should have known, of the facts giving rise to the cause of action and waive any longer, but not shorter, statutory or other limitations periods.  This includes, but is not limited to, the initial filing of a charge with the Equal Employment Opportunity Commission and/or state equivalent civil rights agency.  However, I understand that I will thereafter have the right to pursue any federal claim in the manner prescribed in any right to sue letter that is issued by an agency.

20. **Savings Clause.**  It is expressly understood and agreed that although the Company and I consider the restrictions contained in this Agreement to be reasonable for the purpose of preserving the Company's Confidential Information, as well as the Company's customer relationships with both its prospective and existing customers, and its customer goodwill, if the aforesaid restrictive covenants are found by any court having jurisdiction to be invalid or unreasonable because they are too broad in any extent, then the restrictions herein contained shall nevertheless remain effective, but shall be deemed amended as may be considered to be reasonable by such court, and as so amended shall be enforced.

21. **Jurisdiction and Forum.**  Unless otherwise prohibited by law, any action arising out of this Agreement or the relationship between the parties established herein shall be brought only in the State of Ohio Courts of appropriate venue, or the United States District Court sitting in Ohio, and I hereby consent to and submit myself to the jurisdiction of such Courts.

22. **Waiver of Jury Trial.**  **THE COMPANY AND I EACH WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY ACTION OR PROCEEDING TO ENFORCE OR DEFEND ANY RIGHTS UNDER THIS AGREEMENT OR UNDER ANY INSTRUMENT, DOCUMENT OR AGREEMENT DELIVERED IN CONNECTION HEREWITH OR HEREAFTER OR RELATED IN ANY FASHION TO MY EMPLOYMENT WITH COMPANY.**

23. **Severability.**  It is expressly understood and agreed that the Company and I consider the restrictions contained in this Agreement to be reasonable in scope, purpose and duration.  If, for any reason, any provision of this Agreement shall be held by any court having jurisdiction to be invalid, unreasonable or unenforceable, the provision shall be deemed modified to the extent necessary to allow enforceability of the provision as so limited, it being intended that the Company shall receive the benefits contemplated herein to the fullest extent permitted by law.  If a deemed modification is not satisfactory in the judgment of such court, the unenforceable provision shall be deemed deleted, and the validity and enforceability of the remaining provisions shall not be affected thereby.

23. **Successors and Assigns.**  This Agreement shall be binding upon and inure to the benefit of the Company and its respective successors and assigns, and upon me and any of my heirs, personal representatives and assigns, except that my duties hereunder may not be delegated or assigned.

24. **Captions.**  Captions to paragraphs and sections of this Agreement have been included solely for the sake of convenient reference and are entirely without substantive effect.

**[Remainder of page intentionally left blank.]**

Date: _6/2/2021_

DocuSigned by:

*Mike Baker*

—783232EE4590407...

Employee Signature

Print Name: _Mike Baker_

**ADVIZEX TECHNOLOGIES, LLC**

DocuSigned by:

By: *Jackie Allen*

—8CE44E6D8F1E4B9...

Date: _6/2/2021_

Title: _HR Specialist_